*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*


## OPINION

No. 04-08-00693-CR

David Stuart **BISHOP**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CR-2133A
Honorable Philip A. Kazen, Jr., Judge Presiding

Opinion by:     Phylis J. Speedlin, Justice

Sitting:         Catherine Stone, Chief Justice
                Phylis J. Speedlin, Justice
                Steven C. Hilbig, Justice

Delivered and Filed: December 16, 2009

AFFIRMED AS MODIFIED

David Bishop appeals the trial court's judgment convicting him of possession with intent to

deliver methamphetamine in an amount greater than four grams and less than two hundred grams.

We affirm the trial court's judgment as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 8, 2007, David Bishop was driving an automobile with his former sister-in-law, Jessica Bishop, in the front seat as a passenger. Bishop turned right from a public roadway into the parking lot of a Motel 6 without displaying a turn signal. Officer Joshua Crumley observed Bishop make the illegal turn, and turned his patrol car into the motel parking lot. Bishop had exited his vehicle and was walking toward the motel when Officer Crumley called out for Bishop to stop and return to him. As Bishop approached, Crumley observed that Bishop had a lock-blade knife attached to his pants with a metal clip, which is prohibited by municipal ordinance. The officer asked Bishop for his driver's license, but Bishop stated he had forgotten it. When Crumley asked Bishop's name, he answered that it was "Hernandez;" Crumley did not think Bishop looked like a person named "Hernandez." Crumley also asked Bishop his age and date of birth; the answer Bishop gave was not mathematically consistent. Crumley placed Bishop in custody in his patrol car for safety reasons until he could verify his identity.

Officer Crumley then questioned Jessica Bishop, who told the officer Bishop's true identity. Jessica was arrested for drugs and drug paraphernalia found inside her purse, and was placed in another officer's patrol vehicle. When he ran Bishop's true name, the officer discovered that Bishop had an active arrest warrant and a suspended driver's license. Bishop's vehicle was then searched by the officers pursuant to a search incident to an arrest. When the officers began to search Bishop's vehicle, he started yelling loudly from inside the patrol car that they did not have permission to search the vehicle and it was an illegal search. During the vehicle search, the officers discovered a black shaving kit bag with baggies of methamphetamine and marihuana, and other drug paraphernalia, lying in plain view on the backseat floorboard. Jessica denied any knowledge of the

contents of the black zipper bag, but admitted to possessing the contraband inside her purse.

Bishop was charged in a two-count indictment with possession with intent to deliver methamphetamine, and possession of methamphetamine. Jessica testified against Bishop at his trial, stating that the drugs and paraphernalia in the black zipper bag belonged to Bishop and she had seen him toss the black bag into the backseat when he exited the vehicle at the motel. A jury found Bishop guilty on both counts; however, the trial court recognized that Count II is a lesser included offense of Count I and stated that Count II would be disregarded. The trial court sentenced Bishop to ten years' confinement, but suspended the sentence and placed Bishop on ten years' community supervision.[1] Bishop now appeals.

## ANALYSIS

In two issues, Bishop argues the trial court erred in permitting the State to introduce statements he made objecting to the officers' search of his vehicle because they were an assertion of his Fourth Amendment rights, and erred in admitting the evidence seized from the vehicle because it was the product of an illegal search. *See* U.S. CONST. amend. IV.

---

[1] In its brief, the State points out that, despite the trial court's oral pronouncement that it would disregard the jury's guilty verdict on Count II, the clerk's record contains a judgment for Count I and a separate judgment for Count II. Accordingly, we set aside the judgment pertaining to Count II because, as noted by the trial court, it reflects a lesser included offense of Count I and thus violates Bishop's double jeopardy rights. *See* TEX. R. APP. P. 43.2(b); *Littrell v. State*, 271 S.W.3d 273, 279 (Tex. Crim. App. 2008) (when defendant's double jeopardy rights are violated by judgment convicting of both greater and lesser included offenses, the remedy is to modify the trial court's judgment to set aside the conviction and sentence for the lesser included offense while retaining the conviction and sentence for the greater offense); *Ex parte Madding*, 70 S.W.3d 131, 136-37 (Tex. Crim. App. 2002) (where oral pronouncement of sentence by trial court and written judgment differ, the proper remedy is to modify the judgment to match the court's oral pronouncement). It makes no difference that the two sentences are concurrent; Bishop is entitled to have one judgment set aside. *Littrell*, 271 S.W.3d at 279 n.33.

*Statements Objecting to Vehicle Search*

In his first issue, Bishop argues that he was asserting his Fourth Amendment right to be free from an unreasonable search and seizure when he yelled to the officers that they did not have permission to search his vehicle; he contends that such an assertion of a constitutional right is not admissible as evidence of guilt at trial and was harmful because the State used his statements to connect him to the contraband found inside the vehicle. Officer Crumley testified at trial that when he began searching the vehicle, Bishop started yelling that the officers did not have permission to search the vehicle, "telling me I couldn't search the vehicle, it was an illegal search." Even though Bishop was inside the patrol car with the windows rolled up, Crumley could hear him continuously yelling and screaming at them while they searched the car. At trial, Bishop objected to the admission of his statements on the basis they were an invocation of his Fourth Amendment right against illegal search and seizure; the court overruled the objection and admitted the statements but granted Bishop a running objection.

The State responds that Bishop's statements were not an assertion of his Fourth Amendment rights because the officers did not ask Bishop for consent to search; rather, the officers were relying in good faith on the law in effect at the time of the search permitting a search of a vehicle's passenger compartment incident to an arrest. *See New York v. Belton*, 453 U.S. 454, 460 (1981) (holding police may search the passenger compartment of a vehicle, and any containers therein, incident to a recent occupant's lawful arrest); *see also State v. Ballard*, 987 S.W.2d 889, 892 (Tex. Crim. App. 1999). We agree. The record is clear that the basis for the search of Bishop's vehicle was not consent, but was incident to his arrest and the arrest of his passenger, Jessica. Because the search was not a consent-based search, Bishop's statements were not an invocation of his Fourth

Amendment right to decline permission for a search. Further, Bishop's statements objecting to the search of his vehicle were made spontaneously, in the excitement of the moment, and were not the result of questioning; therefore, they were admissible as "res gestae" statements. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 § 5 (Vernon 2005).

Even if Bishop's statements are construed as an invocation of his general Fourth Amendment right to be free from an unreasonable search, Bishop presents no direct authority holding it is error to admit statements attempting to invoke a Fourth Amendment right in a search incident to arrest context; he analogizes to cases excluding evidence of a defendant's assertion of a constitutional right to counsel or to remain silent. *See Doyle v. Ohio,* 426 U.S. 610, 618 (1976) (denial of due process to use defendant's post-arrest, post-*Miranda* silence for impeachment purposes); *Hardie v. State*, 807 S.W.2d 319, 322 (Tex. Crim. App. 1991) (relying on *Doyle* and stating that evidence of defendant's invocation of right to counsel is inadmissible as evidence of his guilt). The State points out that the Court of Criminal Appeals subsequently clarified the scope of *Doyle* and *Hardie* by explaining that both cases involved erroneously informing a defendant that he had a constitutional right to counsel and then using his exercise of that right against him, and stating that "[t]hose decisions left open the question whether it was federal constitutional error to admit a defendant's request for an attorney when he was not erroneously told that he had the right to counsel before taking a blood-alcohol test." *Griffith v. State*, 55 S.W.3d 598, 606 (Tex. Crim. App. 2001) (holding defendant's due process rights were not violated by admission of evidence that he requested counsel because defendant was repeatedly informed he did not have the right to an attorney before taking a blood-alcohol test).

Bishop also relies on *Reeves v. State*, in which the Waco court of appeals held it was constitutional error to admit evidence that the defendant, who was not in custody, refused to consent

to a warrantless search of his home, but found the error was harmless. *See Reeves v. State*, 969 S.W.2d 471, 494-95 (Tex. App.—Waco 1998, pet. ref'd); *see also Powell v. State*, 660 S.W.2d 842, 845 (Tex. App.—El Paso 1983, no pet.) (in context of custodial defendant's refusal to consent to search of package, court held admitting evidence of the refusal was error, stating generally that invocation of constitutional rights "such as assistance of counsel, silence, or freedom from unreasonable searches may not be relied upon as evidence of guilt"). Both *Reeves* and *Powell* involved evidence of a defendant's refusal to an officer's request for consent to conduct a search. As noted, the officers did not ask Bishop to consent, and he therefore did not refuse consent, to a search of his vehicle; he was already in custody and under arrest when the officers searched the vehicle incident to his arrest. Bishop has not supplied this court with any authority holding that a custodial defendant's statements objecting to a search incident to arrest may not be admitted into evidence because they constitute an invocation of the Fourth Amendment, and we have found no such authority. Accordingly, we decline to hold that it is constitutional error to admit a defendant's statements objecting to a search incident to his arrest, as occurred in Bishop's case. We overrule Bishop's first issue.

### Admission of Evidence Seized from Vehicle

In his second issue, Bishop complains that the trial court erred in admitting the evidence seized from his vehicle because it was the product of an illegal search in violation of the Fourth Amendment under the recent Supreme Court decision in *Arizona v. Gant*, 129 S.Ct. 1710 (2009);U.S. CONST. amend. IV. In *Gant*, the Supreme Court limited the scope of vehicle searches incident to a recent occupant's arrest to situations where the arrestee is unsecured and within reaching distance of the passenger compartment of the vehicle at the time of the search, or it is

reasonable to believe the vehicle contains evidence of the offense of arrest. *Gant,* 129 S.Ct. at 1721, 1723. Bishop argues that the search of his vehicle was unlawful under *Gant* because at the time of the search he was in custody in the backseat of a patrol car, and thus could not access his vehicle; in addition, he was under arrest for driving with a suspended license, an offense for which a vehicle search would not yield any evidence. *See id.* The State responds that Bishop failed to raise any objection to admission of the evidence in the trial court, and therefore has forfeited any complaint on appeal; alternatively, the State argues in part that even if the vehicle search was unlawful under *Gant*, exclusion of the evidence is not required because the officers acted in good faith.

With respect to waiver, Bishop acknowledges that he made no objection to admission of the evidence during trial,[2] with his counsel affirmatively stating "no legal objection" and that the legality of the search as incident to arrest was "conceded." It is well established that in order to preserve a complaint for appellate review, the defendant must have made a specific, timely objection or motion in the trial court, and must have obtained an adverse ruling from the trial court. TEX. R. APP. P. 33.1(a); *Tucker v. State*, 990 S.W.2d 261, 262 (Tex. Crim. App. 1999). This same rule applies in preserving constitutional issues for appellate review. *Heidelberg v. State*, 144 S.W.3d 535, 542-43 (Tex. Crim. App. 2004). Further, an affirmative statement of "no objection" waives any error in the admission of evidence. *De Hoyos v. State*, 81 S.W.3d 853, 854 (Tex. App.—San Antonio 2002, no pet.).

Bishop argues that his failure to preserve error is excused in this instance because the complaint he now raises on appeal is based on *Gant*, which was issued by the Supreme Court after

---

[2] The record contains a motion to suppress evidence filed by Bishop, but no hearing was held on the motion and no ruling was made by the trial court.

his trial had concluded. Bishop cites no authority in support of this assertion, merely stating that he was bound by "the decades of well-settled precedent following *Belton*" and "could not reasonably be required to lodge an objection predicated upon a case that had yet to be decided." We disagree. To preserve the issue for appellate review, Bishop was required to raise an objection to admission of the evidence at trial. TEX. R. APP. P. 33.1(a).

Further, Bishop did have a legitimate objection to raise at trial because, as the Supreme Court pointed out in *Gant*, the rationale for a search incident to arrest has always been based on the dual purposes of officer safety and preservation of evidence, and "[i]f there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to arrest exception are absent. . . ." *Gant*, 129 S.Ct. at 1716-17 (noting the limitations set forth in *Chimel v. California*, 395 U.S. 752, 763 (1969), continue to define the boundaries of the search incident to arrest exception, and that *Belton* was based in large part on the assumption that items inside the passenger compartment of a vehicle are generally within the area into which an arrestee might reach). The Supreme Court in *Gant* did not overrule *Belton*; rather, it rejected a broad reading of *Belton* which would permit vehicle searches incident to *every* arrest, even when there is no possibility the arrestee could access the vehicle. *Id.* at 1718-19 (noting that such a broad reading of *Belton* would "untether the rule from the justifications underlying the *Chimel* exception—a result clearly incompatible with our statement in *Belton* that it 'in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests"). We conclude that Bishop failed to preserve his complaint. We overrule Bishop's second issue.

Based on the foregoing analysis, we overrule Bishop's issues on appeal. However, in order to correct a discrepancy between the trial court's oral pronouncement and the written judgment, we set aside the trial court's judgment as to Count II because it reflects a lesser included offense, and affirm the trial court's judgment as to Count I.

Phylis J. Speedlin, Justice

PUBLISH